SAUL SIMON & another[1] *vs.* HAROLD SIMON & others.[2]

No. 92-P-815.

Suffolk. January 12, 1993. - January 5, 1994.

Present: BROWN. JACOBS. & IRELAND. JJ

*Frauds, Statute of. Contract*, Lease of real estate, Option. *Landlord and Tenant*, Tenancy for term of years. *Estoppel. Fraud. Consumer Protection Act.* Availability of remedy. *Fiduciary.*

In an action involving a claim that the plaintiffs had an option to rent certain property, the issues of breach of contract and damages were incorrectly submitted to the jury, where the option agreement failed to comply with the Statute of Frauds [708-711]; however, where the plaintiffs, in reliance on the trial judge's ruling that the option document satisfied the Statute of Frauds, had had no opportunity to present to the jury the theory that, in fairness, the defendants should be estopped from using the statute to bar the claim, the matter was remanded for a new trial [711-714].

In a civil action in which the plaintiffs claimed a partnership interest in certain real estate, summary judgment was correctly entered for the defendants where there was no dispute that the plaintiffs had released such a claim in writing, and where the plaintiffs' averments of fraud and misrepresentation arising from the claimed partnership were not supported by allegations of specific fact as required by Mass.R.Civ.P. 56(e). [714-715]

In a civil action the judge correctly granted the defendants summary judgment on the plaintiffs' G. L. c. 93A claims where the transactions in issue were private dealings between brothers, influenced by familial impulses and without effect on the public interest, and thus beyond the reach of c. 93A. [715]

CIVIL ACTION commenced in the Superior Court Department on July 26, 1988.

A motion for partial summary judgment was heard by *Elbert Tuttle*, J., and the case was tried before him.

*Robert D. Cohan* for Saul Simon & another.

[1]Zelda Simon.
[2]Jeannine Simon and Back Bay Clothing Company, Inc.

*Morris M. Goldings* (*Ellen S. Shapiro* with him) for Harold Simon & others.

JACOBS, J. A family business dispute caused Saul Simon and his wife Zelda to file a complaint in the Superior Court against Saul's brother Harold Simon, his wife Jeannine and Back Bay Clothing Company, a corporation controlled by Harold. The complaint, as amended, alleges violation by the defendants of an agreement to purchase certain commercial real estate as partners (the partnership claim) and of a contract giving Saul and Zelda the option to rent a portion of that property once purchased (the option claim). The plaintiffs also allege fraud, breach of fiduciary duty, unjust enrichment, negligent misrepresentation, and, inevitably, violation of G. L. c. 93A.

In the cross appeals before us, Saul and Zelda essentially seek review of the allowance of the defendants' motion for partial summary judgment on the partnership and c. 93A claims and from the direction of verdicts against them with respect to their claims of fraud and breach of fiduciary duty.[3] Harold and Jeannine appeal from a judgment on a jury verdict on the option claim assessing damages in favor of Saul and Zelda in the amount of $453,000 for loss of profits.[4]

1. *The factual background.* When Harold and Jeannine had an opportunity to purchase, under a right of first refusal in their lease, the building in which they operated a men's

---

[3]The judge also directed verdicts on the plaintiffs' claims of unjust enrichment and negligent misrepresentation. The plaintiffs have not argued those claims in their brief. We, therefore, need not pass upon any issues relating to them. Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975).

[4]Back Bay Clothing Company joined in the individual defendants' appeal from the denial of their joint motion for award of costs and counsel fees and participated in this appeal only to the extent of arguing that a directed verdict properly had been entered in its favor. Since the denial of the motion for costs and fees was not argued to us, other than in a brief footnote, without citation to authorities or statutes, we need not review it. Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975). Moreover, we find no merit to the plaintiffs' contention that Harold was acting on behalf of Back Bay Clothing Company in his dealings with Saul and Zelda and therefore conclude that a verdict was appropriately directed for the corporation. Accordingly, all further references to the "defendants" encompass only Harold and Jeannine.

clothing store at the corner of Newbury and Clarendon Streets in Boston, they sought financial assistance from Saul and Zelda. In exchange for that assistance, they agreed that Saul and Zelda would be equal partners with them in the ownership of the real estate to be purchased and that Saul and Zelda would have an option to lease the basement of that property for use as a women's clothing store upon the expiration of the lease of the present occupant, the Hope Chest.

Saul and Zelda helped to arrange interim financing for the purchase and actively participated in the acquisition by supplying $50,000 of the initial cash deposit of $150,000 and co-signing a $735,000 promissory note which was partially secured by a mortgage on their home. They allege that on May 31, 1983, the day before they signed the note, Harold told them that he did not want to be partners with them. Harold testified the partnership concept foundered because Saul was unwilling to make additional necessary contributions to the operation and maintenance of the building as the need arose. In any event, the parties agreed in writing, on May 31, 1983, that Harold and Jeannine would pay to Saul and Zelda a total of $250,000 by August 15, 1985, in repayment of the monies advanced by them and in appreciation for their assistance. This agreement, which the plaintiffs testified they entered into in order to maintain family harmony, was intended to supersede the partnership arrangement. Less than a week later, Harold complained to Saul and Zelda that his two-year commitment to pay $250,000 was making him ill with heart palpitations; he thought he was going to have a heart attack. Explaining they "did not want him to die over this," Saul and Zelda entered into a substitute arrangement, in writing, whereby Harold agreed to arrange for the release of the mortgage on Saul's and Zelda's home, repay to them their $50,000 advance, and give them $45,000, as a "finder's fee," by August 31, 1983. The repayment and mortgage release were accomplished on time, but the $45,000 finder's fee remained unpaid for over a year. On February 9, 1985, the parties entered into yet another agreement which provided

for payment of the $45,000 fee by March of 1986, and for the payment of past and future interest on that amount. Their handwritten agreement also contained the following language:

> "Saul & Zelda get the option to rent the lower level of the Hope Chest store when their (the Hope Chest's) lease expires. If they do take it, they will pay the same rate of rent per square foot that Harold is paying for his store. Saul & Zelda will do all the fixing up at their expense. Entrance to upper level has to be maintained from Newbury Street — similar to how it is now. Saul and Zelda have to let Harold know six month[s] ahead of time: (lease expires by May 31, 1987 so that Saul and Zelda have to let Harold know by Nov. 31 [*sic*], 1986.) Saul and Zelda cannot use the name Simon or Simon's on anything with the Simon name as a name for their store. Too confusing."

On September 13, 1985, Harold delivered to Saul and Zelda a check in the amount of $45,000 which contained a statement generally releasing the defendants of all liability to the plaintiffs. Saul and Zelda endorsed the check, and at the same time, signed and returned to Harold, typewritten general release forms which Harold had submitted to them. Saul was then suffering from severe hearing and vision limitations and when Zelda attempted to "lip read" the release language to him, Harold assured Saul and Zelda that they merely were signing a receipt for the $45,000 payment and that the option remained in effect. A year later, Saul and Zelda unsuccessfully sought to exercise the option. This suit followed.

2. *The defendants' appeal.* Having preserved the issue in their answer and during trial by their motion for a directed verdict, Harold and Jeannine argue that the option agreement does not comply with the Statute of Frauds[5] and, there-

---

[5]General Laws c. 259, § 1, provides in pertinent part: "No action shall be brought: . . . Fourth, Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them; . . . Unless the . . . contract . . . is in writing and signed by the party to be charged. . . ."

fore, is unenforceable as matter of law. They contend that the option claim should not have been submitted to the jury. While we agree that the option agreement does not comply with the Statute of Frauds, we conclude that, in the circumstances, a jury should be given an opportunity, in a new trial, to determine whether it nevertheless should be enforced.

Saul and Zelda correctly do not contest the general applicability of the Statute of Frauds to the option claim. See G. L. c. 259, § 1, Fourth; *Schwanbeck* v. *Federal-Mogul Corp.*, 412 Mass 703, 709 (1992) ("[a]ny promise involving real property is enforceable only if that promise meets the requirements of the Statute of Frauds. . . ."). See also *First Natl. Bank of Boston* v. *Fairhaven Amusement Co.*, 347 Mass. 243, 245 (1964). Nor do they resist the general proposition that in order for a writing to satisfy the Statute of Frauds it must contain directly, or by implication, all of the essential terms of the parties' agreement. See *Michelson* v. *Sherman*, 310 Mass. 774, 775 (1942).

Whether a writing satisfies the Statute of Frauds is a question of law. *Schwanbeck* v. *Federal-Mogul Corp.*, *supra* at 709-710. It is a court's function, therefore, to determine what provisions are essential to an agreement sought to be enforced and whether an omitted provision can be supplied by implication. In the absence of a mutual mistake permitting reformation, the omission of an essential term, not supplied by reasonable implication, renders the memorandum insufficient. Restatement (Second) of Contracts § 131 comment g (1979).

In the case of a lease or an agreement to lease, the duration of the leasehold interest is central to that undertaking. "It is an essential element in a lease for a term that there be a demise for a period definitely fixed or at least capable of definite ascertainment." *Farris* v. *Hershfield*, 325 Mass. 176, 177 (1950). The writing offered to satisfy the Statute of Frauds must set forth that essential element with reasonable certainty. Restatement (Second) of Contracts § 131(c) (1979). Moreover, this essential term cannot be provided by implication. See 4 Williston on Contracts § 575 at 80 n.11

(3d ed. 1961), citing *Williams* v. *Pittsfield Lime & Stone Co.*, 258 Mass. 65 (1927) ("where the contract is for a term of years but fails to define the term, no implication can be made in its favor . . ."). By contrast, when an agreement for the sale of land does not state the time for performance, a reasonable time will be implied. See *Cousbelis* v. *Alexander*, 315 Mass. 729, 731 (1944). The option before us is similar in all relevant respects to an agreement to execute a lease. Among other deficiencies, the parties' option document fails to define the time period over which the rental was to extend.

During the trial, the judge permitted Saul to testify, over objection, to discussions concerning the length of the contemplated lease and instructed the jury that it was their responsibility to determine its term.[6] While attendant circumstances and oral communications may be shown by parol evidence to interpret and apply language *used* in a writing, *Tzitzon Realty Co.* v. *Mustonen*, 352 Mass. 648, 652-653 (1967), and cases cited, where a memorandum of agreement for a lease does not satisfy the Statute of Frauds because it does not state or touch upon the term or duration of the lease, that deficiency cannot be supplied by parol evidence. *Parker* v. *Tainter*, 123 Mass. 185, 187 (1877). See *Michelson* v. *Sherman*, 310 Mass. at 777; *A.B.C. Auto Parts, Inc.* v. *Moran*, 359 Mass. 327, 330 (1971). Compare *Hook Brown Co.* v. *Farnsworth Press, Inc.*, 348 Mass. 306, 310-311 (1965) (where writing reflected the essential terms of an oral

---

[6]Saul testified there was a discussion with the defendants to the effect that his rental period would be "[f]or as long as [Harold] would have his store there" and that "Harold would have his store forever, and that I would have our store forever. . . ." There was also evidence that the defendants' lease from the prior owner was for a term of fifteen years and that they ultimately leased the basement space to the Bank of Boston for five years with options to extend for up to fifteen years. There was further evidence that a lease between the defendants and Back Bay Clothing Company was entered into after Harold and Jeannine purchased the building. Saul testified that a successful retail business was related to selecting a location where the business would remain for a minimum of fifteen years. Expert testimony was admitted based on the plaintiffs' prospective loss of profits over a fifteen-year period. Saul testified to prospective loss of profits over a twenty-year period.

agreement to renew a lease, sufficient to satisfy the Statute of Frauds, but was not a formal integrated document, parol evidence was admissible to interpret its terms); Schwartz, Lease Drafting in Massachusetts § 5.2 at 108 (1961). "Unless the writing, considered alone, expresses the essential terms with sufficient certainty to constitute an enforceable contract, it fails to meet the demands of the statute. Accordingly, where the Statute of Frauds, rather than the parol evidence rule is invoked, it follows that recovery may not be predicated upon parol proof of material terms omitted from the written memorandum, even though the oral understanding is entirely consistent with, and in no way tends to vary or contradict, the written instrument." 4 Williston on Contracts, *supra* at 77-78, quoting from *Ellis* v. *Klaff*, 96 Cal. App. 2d. 471, 477 (1950). See *Rosenberg* v. *Deitrick*, 37 F. Supp. 700, 703 (D. Mass. 1940).[7] As the option agreement omitted an essential element which could neither be implied by the court nor supplied by resort to parol evidence, it failed, as matter of law, to comply with the Statute of Frauds.

On appeal, Saul and Zelda for the first time claim that the defendants are estopped to deny the enforceability of the option agreement. They rely on trial evidence which reasonably could be construed as supporting the proposition that they risked their home and savings and twice agreed to reduced financial benefits in reliance on Harold's representation that the option was theirs. Such evidence, coupled with proof that the defendants' promise of an option was intended to induce the reactions it elicited and a jury determination that injustice could be avoided only by enforcement of the promise,

---

[7]In both his deposition and trial testimony, Harold acknowledged he had informed Saul and Zelda that their releases did not affect the option agreement. Although the point was not argued to us or at trial, we note that some courts have held this type of admission sufficient to overcome a Statute of Frauds defense. See Shedd, The Judicial Admissions Exception to the Statute of Frauds: An Update, 12 Whittier L. Rev. 131 (1991). Compare G. L. c. 106, § 2-201(3)(*b*). Whatever the validity of this approach, it is limited to cases in which the existence of an agreement is otherwise denied by the admitting party and does not address or overcome the absence of essential terms in the admitted agreement.

would be sufficient to implicate the doctrine of promissory estoppel.[8] See *Levin* v. *Rose*, 302 Mass. 378, 381-382 (1939); *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 728-729 (1974), *S.C.*, 368 Mass. 807 (1975). "It is settled that the statute [of frauds] is not a bar where the denial of relief, to one who has been misled to his harm, would cause 'an unjust and unconscientious injury and loss.' " *Levin* v. *Rose*, *supra* at 381-382, quoting from *Glass* v. *Hulbert*, 102 Mass. 24, 36 (1869). See *Cellucci* v. *Sun Oil Co.*, *supra* at 728. Had estoppel been raised, there was sufficient evidence to permit that issue to go to the jury. Compare *MacKeen* v. *Kasinskas*, 333 Mass. 695, 699 (1956). "Whether evidence tending to support an estoppel is sufficient to prove it is ordinarily a question of fact." *Levin* v. *Rose*, *supra* at 382.

Usually, we decline to address an argument that was not preserved at trial. *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977). *Krupp* v. *Gulf Oil Corp.*, 29 Mass. App. Ct. 116, 120 & n.4 (1990). The difficulty in applying that policy here is that we assume that sound pragmatic and procedural limitations prevented the plaintiffs from arguing estoppel below. Not only were the plaintiffs not obliged to fend off, in their complaint, the defendants' possible assertion of a Statute of Frauds defense, but their inclusion of such anticipatory matter may well have constituted improper pleading practice. See 5 Wright & Miller, Federal Practice & Procedure § 1276 (2d ed. 1990); Smith & Zobel, Rules Practice § 8.13 at 202 (1974) ("If plaintiff is relying on estoppel to avoid a defense, he would not ordinarily plead it"). More-

---

[8]In *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 761 (1978), the Supreme Judicial Court, while affirming this court's application of the principles of "promissory estoppel" in 6 Mass. App. Ct. 152 (1978), indicated it did not utilize that expression "since it tends to confusion rather than clarity," and instead employed the language of reliance. See *Greenstein* v. *Flatley*, 19 Mass. App. Ct. 351, 357 (1985). Compare *Boylston Dev. Group, Inc.* v. *22 Boylston St. Corp.*, 412 Mass. 531, 542 n.17 (1992), where the court discusses the difference between "promissory estoppel" and "equitable estoppel." See also Feinman, Promissory Estoppel and Judicial Method, 97 Harv. L. Rev. 678, n.1 (1984), in which it is noted that " 'promissory estoppel' and 'reliance' are both employed widely and indiscriminately in the case law. . . ."

over, the defendants' failure to include the Statute of Frauds as a ground for their motion for partial summary judgment supported an inference that the defense was nothing more than "boilerplate." Compare *Connors* v. *Hallmark & Son Coal Co.,* 935 F.2d 336, 343-344 n.12 (D.C. Cir. 1991). In any event, the plaintiffs' complaint, liberally read, reasonably could be construed as containing the seeds of an estoppel claim.

Early in the trial, the judge indicated that he believed the option document satisfied the Statute of Frauds and that it was for the jury to determine the length of the lease contemplated by the agreement. Having the advantage of that favorable judicial stance, the plaintiffs would have been ill-advised to press an estoppel theory, which, by definition, assumes the facial validity of the Statute of Frauds defense.

Had the judge concluded, as have we, that the writing relied upon by the plaintiffs does not satisfy the Statute of Frauds, the plaintiffs would have had the opportunity to persuade the jury that the defendants, in fairness, nevertheless should be estopped from using the statute to bar their claim. If the jury was so persuaded, they then, untrammeled by the rigid strictures of that statute, could have considered evidence of attendant circumstances and oral communications, such as those set forth in note 6, *supra,*[9] to determine whether the parties had defined the essential terms of the lease sufficiently to make binding the option agreement or whether the purported option was too indefinite to enforce. See *Geo. W. Wilcox, Inc.* v. *Shell E. Petroleum Prods., Inc.,* 283 Mass. 383, 388-390 (1933); *Simons* v. *American Dry Ginger Ale Co.,* 335 Mass. 521, 523-524 (1957). Only if the jury, in the light of attendant circumstances, determined that the meaning of the option agreement could be "ascertained

[9]A prerequisite to the consideration of such extrinsic or "parol" evidence is a judicial determination that the entire agreement of the parties was not integrated in the option document and that the evidence is not offered to vary its terms. See *Kesslen Shoe Co.* v. *Philadelphia Fire & Marine Ins. Co.,* 295 Mass. 123, 129-131 (1936); *Shain Inv. Co.* v. *Cohen,* 15 Mass. App. Ct. 4, 12-13 (1982); Hughes, Evidence § 422 (1961 & Supp. 1993); Liacos, Massachusetts Evidence 385-386 (5th ed. 1981 & Supp. 1985).

with reasonable certainty," *Simons* v. *American Dry Ginger Ale Co.*, *supra* at 523, should they then turn to the issues of breach and damages.[10]

3. *The plaintiffs' appeal.* a. *The partnership claims.* Whatever the status of the partnership agreement prior to the time that Saul and Zelda accepted the check for $45,000, their endorsement of that check, with its broad release language, together with their signing of separate release forms containing similarly broad language, effectively terminated any claim to a proprietary interest in the building. The clear and uncontradicted thrust of the factual allegations in the materials properly before the judge at the time of his allowance of the defendants' motion for summary judgment is that while the option agreement was not encompassed, or intended to be encompassed in the release provisions, any claim to a partnership interest in the building effectively and clearly was released. The averments of fraud and misrepresentation, as they apply to the partnership claims, are not supported by allegations of specific fact as required by Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). The defendants' later efforts to resist the plaintiffs' attempts to enforce the option agreement do not support an inference of fraud *at the time* of the signing of the release and endorsement of the check. Any failure on the part of Saul or Zelda to read or comprehend the release language was, in the absence of fraud, immaterial. See *Cohen* v. *Santoianni*, 330 Mass. 187,

---

[10]The parties extensively argued the question whether the plaintiffs should have been permitted to base their damage claim on proof of lost profits. If reached on retrial, proof of damages may well be reliant on a determination of the length of the lease contemplated by the parties. We, therefore, do not address the issue other than to note that proof of lost profits is permitted to the extent they are established with reasonable certainty. *Eastern Paper Box Co.* v. *Herz Manuf. Corp.*, 323 Mass. 138, 145 (1948). *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 416 (1991), *S.C.*, 412 Mass. 703 (1992). Restatement (Second) of Contracts § 352 comment a, illus. 2 (1979). See *Computer Systems Engr., Inc.* v. *Qantel Corp.*, 740 F.2d 59, 67 (1st Cir. 1984). Weisman & Clements, Protecting Reasonable Expectations: Proof of Lost Profits for New Businesses, 76 Mass.L.Rev. 186 (1991).

193 (1953). See also *Costello* v. *Hayes*, 249 Mass. 349, 356 (1924).

Saul and Zelda unconvincingly attempt to connect and intertwine the partnership agreement with the option agreement to support their contention that there existed between the parties an unexecuted accord. Under their theory, the refusal of Harold and Jeannine to honor the option agreement revived the partnership agreement, notwithstanding the release documents. See *Peters* v. *Wallach*, 366 Mass. 622, 628 (1975); *Lipson* v. *Adelson*, 17 Mass. App. Ct. 90, 92-93 (1983). This argument is unsupported by any specific facts contained in the rule 56 materials before the judge, as distinguished from testimony at the trial, which reasonably might lead to the inference that the option agreement and partnership agreement were interdependent and interrelated at any relevant time. To the contrary, the option arrangement appears to have remained constant throughout while the oral partnership agreement was replaced by three subsequent written agreements, none of which reserved any ownership interest in Saul and Zelda.

b. *The G. L. c. 93A claim.* As the judge correctly determined, the parties' dealings with each other "do not even remotely resemble the usual arm's-length negotiations encompassed by G. L. c. 93A." The transactions in issue essentially were private dealings between brothers, strongly influenced by familial impulses, and without effect on the public interest. They were, therefore, beyond the reach of G. L. c. 93A. *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 466-467 (1982).

c. *Other issues.* Saul and Zelda's argument that the release was not supported by consideration is belied by the payment of $45,000 in advance of "March, 1986," the date specified in the February 9, 1985, agreement. Equally unpersuasive is their claim that Harold violated a fiduciary relationship with Saul, since a familial relationship, of itself, does not give rise to fiduciary obligations. *Kelly* v. *Kelly*, 358 Mass. 154, 156-157 (1970). See *Schleifstein* v. *Greenstein*, 9 Mass. App. Ct. 344, 348 (1980). The failure of the plaintiffs' evidence of fraud, justifying the direction of a verdict against

them on that count, is not inconsistent with our estoppel analysis. "Proof of fraud in its strict sense is not essential to estoppel." *McLearn* v. *Hill*, 276 Mass. 519, 527 (1931). We do not comment on claims of error preserved and argued by the defendants and relating to the conduct of the trial since the matters raised either did not unfairly prejudice the defendants or involved rulings well within the judge's discretion.

The judgment for the plaintiffs on the breach of contract count is vacated and that claim is remanded for a new trial consistent with this opinion. The judgment for the defendants Harold Simon and Jeannine Simon on all other counts is affirmed. The judgment for the defendant Back Bay Clothing Company, Inc., on all counts is affirmed.

*So ordered.*