Gershengorn, J.
This matter is before the court on the plaintiff, Anil Kumar’s (“Dr. Kumar”) motion to *173 dismiss. After oral argument, and based on all of the credible evidence, the court makes the following findings and rulings.

BACKGROUND

On May 18, 2004, the plaintiff, Dr. Kumar, alleges that he signed a written offer (the “offer”) to purchase a medical office, located in Unit 412 of 3 Woodland Road, Stoneham, MA (“Unit 412”) from the defendant, David Roth (“Dr. Roth”). Dr. Roth is a neurological surgeon who owned Unit 412 and operated his medical office out of the space.
The offer set no closing date and was, according to the document’s terms, contingent upon the following conditions:
(a) acceptable lease with Heath Diagnostics/Mel-rose-Wakefield Hospital
(b) acceptable lease with Dr. David Roth
(c) satisfactoiy inspection of premises
In addition, the Offer contained the following language:
NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE PURPOSE OF THIS DOCUMENT IS TO MEMORIALIZE CERTAIN BUSINESS POINTS. THE PARTIES MUTUALLY ACKNOWLEDGE THAT THEIR AGREEMENT IS QUALIFIED AND THAT THEY, THEREFORE, CONTEMPLATE THE DRAFTING AND EXECUTION OF A MORE DETAILED AGREEMENT. THEY INTEND TO BE BOUND ONLY BY THE EXECUTION OF SUCH AN AGREEMENT AND NOT BY THIS PRELIMINARY DOCUMENT. (All caps in original.)
The offer stated that the parties would execute a Purchase and Sale Agreement acceptable to both parties by May 31, 2004. The parties extended this date approximately five times. The final extension expired on September 30, 2004.
During the period between May 18, 2004, the date Drs. Kumar and Roth signed the document in question, and September 30, 2004, the final extension expiration date, Dr. Kumar took several steps to secure his purchase of Unit 412. Dr. Kumar alleges that Dr. Roth had knowledge of these steps and that during this period of time, Dr. Roth orally promised to sign a purchase and sale agreement. In reliance on these promises, Dr. Kumar performed the following acts: (1) Dr. Kumar applied and was approved for a mortgage with Central Cooperative Bank, Dr. Kumar paid $5,000 to “lock in” a favorable interest rate on July 16, 2004; (2) on August 24, 2004, Dr. Kumar arranged for an appraisal of the Unit to be conducted. Dr. Kumar alleges that he is obligated to pay $2,750 to Central Cooperative Bank for the appraisal.
On August 18, 2004, Dr. Kumar alleges that he delivered to Dr. Roth a “Standard Form Condominium Purchase and Sale Agreement” (the “Agreement”) together with a copy of a check for Seventy-nine Thousand Dollars ($79,000) made out to “Gary Robinson Escrow Account” to Dr. Roth. Gary Robinson is Dr. Roth’s attorney. Dr. Kumar had already signed this Agreement when it was delivered. However, Dr. Roth never signed this Agreement, nor was the check deposited into the escrow account. On August 24, 2004, Attorney Robinson sent a correspondence via facsimile requesting that Dr. Roth’s attorney contact him regarding the proposed Purchase and Sale Agreement. At some time after this correspondence, Dr. Kumar alleges that Dr. Roth orally assured him [Dr. Kumar] that he would execute the Agreement.
The Agreement was never signed, and after the final extension date expired, Dr. Kumar initiated the current action.

DISCUSSION

I. Rule 12(b)(6) Standard
Massachusetts Civil Procedure Rule 12(b)(6) permits the dismissal of a Complaint for a failure to state a claim upon which relief may be granted if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 97-98 (1977), quoting in part Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To survive a motion to dismiss, the complainant need not advance the correct legal theory but merely must provide a “short and plain statement of the claim showing that the pleader is entitled to relief.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979), quoting Mass.R.Civ.P. 8(a)(1). In assessing a motion to dismiss, this court accepts as true all allegations in the complaint as well as any reasonable inferences drawn thereon. See General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992); Nader, 372 Mass at 98.
II. Breach of Contract
The plaintiff alleges breach of contract. In order to prevail on a breach of contract claim, the plaintiff must prove: [1] the parties had an agreement; [2] Dr. Kumar was ready, willing and able to perform; [3] Dr. Roth’s breach prevented Dr. Kumar from performing; [4] Dr. Kumar suffered damages as a result of the breach. Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996). In the present case, the plaintiff alleges that the offer executed by the parties contained an agreement, which was subsequently breached by Dr. Roth when he refused to sign the purchase and sale agreement. The plaintiff, however, fails to recognize that the Offer contained language denoting that it was merely an offer, and that the parties did not intend to be bound until the execution of a more formal document. This language was specifically endorsed by the Supreme Judicial Court, who noted “[i]f parties do not intend to be bound by a preliminary agreement until the execution of a more formal document they should employ [this language].”[1] McCarthy v. Tobin, 429 Mass. 84, 88 n.3 (1999), citing McCarthy v. Tobin, 44 Mass.App.Ct. *174 274,279 n. 10 (1998) (emphasis added). Therefore, the offer was not an “agreement” as needed to maintain an action for breach of contract. Rather, it was a preliminary document.
III. Statute of Frauds
Defendant argues that the alleged oral assurances by Dr. Roth that he would sell Unit 412 to Dr. Kumar cannot be enforced because of the Statute of Frauds. The Statute of Frauds is codified at G.L.C. 259, §1 and provides, in pertinent part: “[n]o action shall be brought. . . Fourth, Upon a contract for the sale of lands, tenements or hereditaments or of any interest concerning them; . . . Unless the contract ... is in writing and signed by the party to be charged . . .” Id., Simon v. Simon, 35 Mass.App.Ct. 705, 709 n. 5 (1994) (emphasis added). Whether a writing satisfies the Statute of Frauds is a question of law. Schwanbeck v. Federal-Mogul Corp., 412 Mass. at 709, 709-10 (1992).
In the present case, the writing in question was clearly not meant to bind the parties, as discussed above. As such, the writing was not a contract, and therefore cannot serve to satisfy the Statute of Frauds. In the absence of a writing, the alleged oral assurances made by Dr. Roth for the sale of land cannot be enforced. G.L.C. 259, §1.
IV. Estoppel/Specific Performance
In response to the defendant’s Statute of Frauds defense, the plaintiff argues that because Dr. Kumar relied to his detriment on the oral promises made by Dr. Roth, he is estopped from raising Statute of Frauds as a defense. The issue of estoppel was discussed in Hickey v. Green, 14 Mass.App.Ct. 671 (1982), where the court noted:
A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific performance . . .
Hickey, 14 Mass.App.Ct. at 673-74 (emphasis added). In the present case, the plaintiff argues that: 1) the $5,000 spent to “lock in” a favorable interest rate and 2) the $2,750 spent on an appraisal, are changes of position taken in reliance on Dr. Roth’s promise to sign a Purchase and Sale agreement that warrants specific performance.[2]
The plaintiff cites to cases where the court ordered specific enforcement if one side “dangled the other on a string” or “strung the other side along” as he alleges Dr. Roth did in the instant case. For example, in Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 725-28 (1974), the court specifically enforced a purchase and sale agreement where the plaintiff was repeatedly assured that a deal had been made and that the plaintiff was indeed bound by it and only a bureaucratic formality was still to be attended to. However, the plaintiff fails to point out that in Celucci, there was a valid purchase and sale agreement. In the present case, the memoranda in question is not a purchase and sale agreement. Rather, its only purpose was to memorialize certain business points.
Plaintiff also points to Greenstein v. Flatley, 19 Mass.App.Ct. 351, 352-54 (1985), where a landlord submitted a lease to a prospective tenant and then strung the tenant along for more than four months before repudiating the lease which he had submitted. However, in Greenstein, the plaintiff was assured that when the plaintiff signed the lease, there would be a deal, id., at 352, while in the present case, memoranda specifically states that there would not be a deal until a more detailed agreement was signed.
Finally, the plaintiff highlights two cases where the court noted that specific enforcement is appropriate if the plaintiff would suffer “an unjust and unconscien-tious injury and loss . . .” Simon v. Simon, 35 Mass.App.Ct. 705, 712 (1994); Nasarella v. Peck, 403 Mass. 757, 761 (1989). In the present case, the plaintiff allegedly spent $7,750 in reliance on Dr. Kumar’s promise to sell. This is simply not the type of “unjust and unconscientious injury and loss” contemplated by the exception to the rule. See Andrew et at v. Charon, 289 Mass. 1 (1935) (where full purchase price was insufficient to grant exception to the Statute of Frauds). Accordingly, the defendant’s motion to dismiss is ALLOWED.

ORDER

Based on the foregoing, the defendant, David Roth’s, motion to dismiss is hereby ALLOWED.

The pertinent language is as follows: “NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE PURPOSE OF THIS DOCUMENT IS TO MEMORIALIZE CERTAIN BUSINESS POINTS. THE PARTIES MUTUALLY ACKNOWLEDGE THAT THEIR AGREEMENT IS QUALIFIED AND THAT THEY, THEREFORE, CONTEMPLATE THE DRAFTING AND EXECUTION OF A MORE DETAILED AGREEMENT. THEY INTEND TO BE BOUND ONLY BY THE EXECUTION OF SUCH AN AGREEMENT AND NOT BY THIS PRELIMINARY DOCUMENT.”

defendant argues that even if the alleged oral assurances were made, they occurred after August 24, 2004. Therefore, Dr. Kumar could not have acted in reliance of his statements because the alleged statements occurred after Dr. Kumar spent $7,7250 ($5,000 to “lock in” the interest rate, $2,750 for the inspection) on expenses related to the property. For purposes of this motion, the court will accept facts as tme all allegations in the complaint as well as any reasonable inferences drawn thereon. See General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992).Therefore, the court will assume that the oral assurances occurred before Dr. Kumar expended the $7,750.