NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1082

CHARLES J. BACON, SECOND

<u>vs</u>.

KENNETH J. MCMULLEN & another.[1]

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

The defendants, Kenneth J. McMullen[2] and Danielle M. McMullen (sellers), appeal from a Superior Court judgment

---

[1] Danielle M. McMullen.

[2] On April 30, 2025, the day before oral argument, counsel for the appellants filed a suggestion of death, informing the court that defendant-appellant Kenneth J. McMullen had died on April 27, 2025. At oral argument, counsel represented that he continued to appear as counsel for the deceased, and counsel for the plaintiff had no objection to the case going forward on that basis. As a matter of law, however, counsel's representation of Mr. McMullen ended with Mr. McMullen's death. See Barnes v. Barnes, 291 Mass. 383, 385 (1935); Newton Centre Realty, Inc. v. Jaffe, 97 Mass. App. Ct. 726, 728 (2020). As of the date of issuance of this decision, the personal representative of the estate of Mr. McMullen's has not sought substitution as a party, and no one has entered an appearance for the estate. Under these circumstances, we have considered the appeal, deeming Mr. McMullen's former counsel to have appeared as amicus curiae on Mr. McMullen's behalf. See Barnes, supra. See also Fenelon v. Fenelon, 244 Mass. 14, 16-17 (1923). Moreover, we will exercise

finding that they committed a breach of a contract with the plaintiff, Charles J. Bacon, II (buyer), to sell their residential property in Bolton (the property), and ordering specific performance of the contract.  We affirm.

Background.[3]  In early August 2020, the buyer made an offer to purchase the property from the sellers accompanied by a $1,000 deposit, and the defendants accepted the offer.  About three weeks later the parties, all represented by separate counsel, signed a purchase and sale agreement (agreement), which set forth a purchase price of $575,000 and a closing date of September 25, 2020.  The agreement was supported by a deposit of $6,000.  The agreement included a mortgage contingency clause that permitted the buyer to cancel the agreement on or before September 15, 2020, if he was unable to obtain financing.  On September 15, the buyer's attorney contacted the sellers and their attorneys and requested to extend the buyer's time to obtain a mortgage commitment to September 17, and to extend the closing date to September 30.  The buyer's attorney provided a

---

our discretion to issue this decision, as to Mr. McMullen only, nunc pro tunc to the day before his death.  The estate's time to file for reconsideration or for further appellate review, however, will run from the date of issuance.  See Barnes, supra at 386.

[3] The facts are taken from the trial judge's written findings after a jury-waived trial, supplemented by documents admitted in evidence at the bench trial.

2

one-page document to memorialize the extension, which the buyer's attorney and Kenneth McMullen's attorney signed.[4] Danielle McMullen did not sign the extension document, but later that evening she sent an e-mail to the parties and their attorneys that read, "Dear All.  Thought it over, I was wrong, was having a bad day.  My leg was hurting.  I you want [sic] to have the house on the date that you want it.  The house is yours now.  And I really do wish you the best with it.  Danielle M. McMullen."  The buyer's attorney responded, thanking Danielle for her willingness to extend the closing deadline and asking Danielle's attorney to have Danielle sign the extension agreement; however, neither Danielle nor her attorney ever signed the extension agreement.

Several e-mail exchanges between the parties followed in which Danielle made it clear that she would not be vacating the property prior to the scheduled September 30 closing date.  On September 22, the buyer's attorney sent a letter to Danielle and her attorney, notifying them that he considered Danielle's statements an anticipatory breach of the agreement and stating that the buyer would not move forward with the closing until he knew the sellers would perform.  That same day, a new attorney for Danielle sent a letter to the buyer stating that Danielle

---

[4] The purchase and sale agreement authorized the attorneys for the parties to sign extensions on their behalf.

was exercising a provision of the agreement to extend the sellers' time for performance by thirty days.

The buyers did not appear for the closing on September 25 because the closing date had been extended and the sellers had neither submitted the documents necessary to close, nor had they vacated the property. On September 30, the buyer was ready to close,[5] and Kenneth had delivered some of the necessary documents, albeit without Danielle's signature. Without her signature on the deed, the parties were unable to proceed. The parties' attorneys continued to work toward closing, setting a new closing date for October 8. That date came and went, and on November 2, the sellers' broker mailed the buyer back his offer and a check for $7,000 to refund his deposits.

The buyer filed a complaint in the Superior Court on December 22, 2020, alleging breach of the agreement and requesting specific performance. The sellers counterclaimed, alleging prior breach of the contract by the buyer. After a bench trial, the judge found that the buyer "was ready, willing, and able to perform at all times during the negotiations for the real estate transaction at issue here, and it was solely due to the [sellers'] failure to put in a good faith effort to deliver

---

[5] The judge found not only that the buyer was "ready, willing, and able to close" on September 30, but also that he would have been ready to close on September 25.

4

the Residence that the transaction fell through."  Accordingly, judgment entered in favor of the buyer both on his breach of contract claim and on the sellers' counterclaim.  The judge further found that "monetary damages are not sufficient to compensate the Plaintiff in this situation, and that the appropriate remedy here is specific performance."  The sellers timely appealed.

Discussion.  "In nonjury cases, findings of fact shall not be set aside unless clearly erroneous."  Barboza v. McLeod, 447 Mass. 468, 469 (2006).  See Mass. R. Civ. P. 52 (a), as amended 423 Mass. 1402 (1996).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 792 (1986), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).  "On the other hand, to ensure that the ultimate findings and conclusions are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts."  Kendall v. Selvaggio, 413 Mass. 619, 621 (1992).

On appeal, the sellers argue primarily that Danielle's September 15 e-mail message did not constitute a writing under the Statute of Frauds because it lacked the material terms necessary to establish a binding and enforceable contract.  It

5

follows, according to the sellers, that the original closing date was not extended and that the buyer's failure to appear on that date was a breach of the agreement, excusing the sellers from performance.

"[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." K & K Dev., Inc. v. Andrews, 103 Mass. App. Ct. 338, 344 (2023), quoting Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). No one contests the judge's finding that the purchase and sale agreement was a writing that contained all of the material terms and "created a valid, binding contract between the parties." The pertinent question here is whether Danielle's e-mail message, informing the buyer that he could "have the house on the date that you want it," together with the extension agreement signed by the remaining parties, is enforceable.

"Any promise involving real property is enforceable only if that promise meets the requirements of the Statute of Frauds, G. L. c. 259, § 1." Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709 (1992). "As a black letter rule, the Statute of Frauds bars suit '[u]pon a contract for the sale of lands . . . or of any interest in or concerning them . . . [u]nless the promise, contract or agreement . . . is in writing and signed by

6

the party to be charged therewith'" (citation omitted).  K & K Dev., Inc., 103 Mass. App. Ct. at 348.  "To satisfy the Statute of Frauds, a writing . . . 'must contain directly, or by implication, all of the essential terms of the parties' agreement.'"  Id., quoting Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994).  "Whether a writing satisfies the Statute of Frauds is a question of law."  Id.

The judge found that "[t]he e-mail effectively serve[d] as Danielle's signature of the extension."  We agree.  As an initial matter, e-mail communications may satisfy the Statute of Frauds.  See K & K Dev., Inc., supra at 349-350.  See also G. L. c. 110G, § 7 (c).  The e-mail originated from Danielle's e-mail account and her typewritten signature appears at the bottom.  See G. L. c. 110G, § 9 (a) (an "electronic signature is attributable to a person if it was the act of the person.  The act of the person may be shown in any manner").

The sellers argue that the e-mail was insufficient because it did not specifically mention the September 30 closing date proposed by the buyer and "lacked other specifics that were set forth on the extension request."  However, the e-mail need not be read in isolation.  Writings read together may satisfy the Statute of Frauds.  See Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 600 (2007); Waltham Truck Equip. Corp. v. Massachusetts Equip. Co., 7 Mass.

7

App. Ct. 580, 583-584 (1979). The writings may, but need not, incorporate each other by reference. See Tzitzon Realty Co. v. Mustonen, 352 Mass. 648, 653 (1967).

The e-mail was sent to all parties and attorneys involved in the transaction and, as evidenced by its contents, responded to the buyer's attorney's proffer of the extension agreement. The subject line of the e-mail included the buyer's last name, the name of the street where the property was located, and the words "Closing date confirmed." The body of the e-mail contained an unambiguous statement from Danielle that she wanted the buyer to "have the house on the date that you want it."[6] The judge's finding that Danielle's e-mail was sufficient to accept the extension of closing date, and that the writing, read together with other related writings, satisfied the Statute of Frauds, was correct as both of matter of law and as a matter of fact.

The sellers also argue that the buyer committed a breach of the agreement because he was not ready, willing, and able to perform on September 25. As we conclude that Danielle's e-mail

---

[6] The sellers place undue emphasis on the fact that Danielle's e-mail used the words "I you want" and argue that the judge set forth "an entirely incorrect version" of the e-mail in her findings when she transposed the words to reflect what Danielle obviously intended to say. The e-mail was not "incomprehensible," as the sellers assert. The judge's finding that Danielle agreed to the extension in the e-mail is amply supported by the record and is not clearly erroneous.

effectively extended the closing date, this argument fails as a matter of law.  It also fails as a matter of fact because the judge found that the buyer would have been ready, willing, and able on September 25, but for the sellers' conduct.  The sellers have not argued or demonstrated that the judge's finding in this regard was clearly erroneous.

Likewise, the sellers' argument that specific performance was an inappropriate remedy because the agreement lacked sufficient terms to satisfy the Statute of Frauds must fail.  A judge has "a reasonable range of discretion . . . with respect to granting or denying specific performance." Raynor v. Russell, 353 Mass. 366, 367 (1976).  We therefore, "examine the judge's decision from the viewpoint of whether there has been an abuse of discretion." Quinn v. Mar-Lees Seafood, LLC, 69 Mass. App. Ct. 688, 706 (2007).  "It is well-settled law in this Commonwealth that real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land." McCarthy v. Tobin, 429 Mass. 84, 89 (1999), quoting Greenfield Country Estates Tenants Ass'n, Inc. v. Deep, 423 Mass. 81, 88 (1996).  The judge did not abuse her discretion in ordering specific performance of the agreement.[7]

---

[7] The buyer's request for appellate attorney's fees is denied.

9

Judgment affirmed.[8]

By the Court (Massing, Hand & Hershfang, JJ.[9]),

Paul Little

Clerk

Entered:  August 4, 2025.

---

[8] As to Kenneth J. McMullen only, this decision shall be entered nunc pro tunc to April 26, 2025.

[9] The panelists are listed in order of seniority.