Rockingham
No. 2004-816

BARRY COHOON & a.

v.

IDM SOFTWARE, INC. & a.

Argued: October 20, 2005
Opinion Issued: December 15, 2005

*Cleveland, Waters and Bass, P.A.*, of Concord (*William B. Pribis* on the brief and orally), for the plaintiffs.

*Cook, Little, Rosenblatt & Manson, P.L.L.C.*, of Manchester (*Arnold Rosenblatt* and *Michael S. Owen* on the brief, and *Mr. Rosenblatt* orally), for defendant IDM Software, Inc.

*McLane Graf Raulerson & Middleton, P.A.*, of Manchester (*Wilbur A. Glahn, III* and *Andrea L. Daly* on the brief, and *Mr. Glahn* orally), for defendants John H. Leggett and Stuart J. Sheppard.

NADEAU, J. The defendants, IDM Software, Inc. (IDM), John H. Leggett (Leggett), Stuart J. Sheppard (Sheppard), J. Tracy Emerick, Dana W. Leggett and Robert Sheppard appeal orders of the Trial Court (*McHugh*, J.) granting summary judgment to the plaintiffs, Barry Cohoon and Joseph McCarran. The plaintiffs cross appeal. We affirm in part, reverse in part, vacate in part and remand.

The following facts were either found by the trial court or are supported in the record before us. Leggett is the president and majority shareholder, as well as a director, of IDM. Sheppard is also a director and shareholder of IDM. Cohoon and McCarran purchased shares of IDM, each paying $30,000. The shares had not been registered or properly noticed in compliance with RSA 421-B:11 (Supp. 2005). As a result of errors made in registering its shares, IDM sued its prior counsel for malpractice (the malpractice suit). Among the damages asserted by IDM in that action was "exposure to shareholder claims." In its pretrial statement, IDM elaborated on this element of damages, alleging "[l]iability for claims of rescission pursuant to N.H. RSA 421-B:25 totaling $635,000, plus interest, costs and attorneys' fees."

The defendant-attorneys in the malpractice suit filed a motion *in limine* to exclude evidence of rescission damages. In an order dated March 24, 2003, the court ruled that it would "permit [IDM] as part of its damages, to include as a separate component the amount of money that it would be required to return to the investors pursuant to RSA 421-B." Before the court issued the order, however, the parties settled the malpractice suit for $900,000. By letter to its shareholders dated May 19, 2003, IDM gave notice of a special meeting of shareholders to consider approving a plan of dissolution of the corporation.

Subsequently, Cohoon and McCarran brought this action against IDM, Leggett and Sheppard, among others. Their writ asserted causes of action for rescission under RSA 421-B:25 against all principal defendants, breach of majority shareholders' duty against Leggett and others, and a claim captioned "PLEA OF LAW—JUDICIAL ESTOPPEL" against IDM. All of the parties moved for summary judgment.

The trial court initially granted the plaintiffs' motion and denied the defendants', noting that it could not "imagine a case crying out for the application of the doctrine of judicial estoppel more than the case at bar." The court ruled:

> By claiming that the corporation had a legal obligation to pay its [investors] $635,000, and by refusing to negotiate a lesser amount with the investors in the context of settlement discussions in the earlier case, the corporation obligated itself to fully refund to its investors the amounts of money that it received from the law firm defendant. By taking the position that the corporation did in the earlier litigation, it would be a fraud on the Court now to seek to withhold payment of the investors' claims in full.

The defendants moved for reconsideration and the court held an evidentiary hearing. The court then ruled that its previous order finding

4

that the requirements for judicial estoppel had been met was erroneous. It nevertheless affirmed its grant of summary judgment to the plaintiffs "on the grounds that [rescission] is available to the plaintiffs both under the terms of RSA 421-B and also under the doctrine of equitable estoppel."

Upon motion of the individual defendants for clarification and/or reconsideration, the court clarified that its findings were applicable to Leggett and Sheppard, but not to the other individual defendants. IDM, Leggett, Sheppard, J. Tracy Emerick, Dana W. Leggett and Robert Sheppard appeal and the plaintiffs cross appeal.

"In reviewing a trial court's summary judgment ruling, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *Furbush v. McKittrick*, 149 N.H. 426, 429 (2003). "We review the trial court's application of the law to the facts *de novo.*" *Id.*

IDM first argues that the trial court erred in applying equitable estoppel because the plaintiffs failed to prove the elements of that doctrine. We need not address this argument, however, because we find merit in the plaintiffs' cross-appeal. *Cf. Sherryland v. Snuffer*, 150 N.H. 262, 267 (2003) (where trial court reaches correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision). Specifically, the plaintiffs argue that the trial court "erred when it ultimately ruled that judicial estoppel did not apply to the facts of this case."

"The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *In re Pack Monadnock*, 147 N.H. 419, 425-26 (2002) (quotation omitted); *see Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 848 (2005). We have noted three factors that "typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *see Pack Monadnock*, 147 N.H. at 426.

> One factor to consider in deciding whether to apply the doctrine of judicial estoppel is whether the party's later position is clearly inconsistent with its earlier position. Courts also regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Pack Monadnock*, 147 N.H. at 426 (quotations and citations omitted); *see Kelleher*, 152 N.H. at 848.

In reversing its decision on judicial estoppel, the trial court upheld its finding that the first factor had been met. With regard to the second factor, however, the court noted that the malpractice case settled before trial and that "the issue under consideration, namely whether or not the shareholders of IDM were entitled to [rescission] pursuant to RSA 421-B:25, was not formally decided by the Court until after the first lawsuit was settled." The court then interpreted our decision in *Pack Monadnock* as "saying . . . that before the doctrine of judicial estoppel is implemented in this state there has to be a showing that the Court adopted the first position of the party and that that adoption induced the other party to take certain action to its detriment."

The trial court found that the plaintiffs here could not make that showing. Specifically, it stated:

> The bottom line is this. The inducement for the defendant in the original lawsuit to settle could not have been this Court's acceptance of the plaintiffs' position in the original lawsuit to the effect that [rescission] was available to the shareholders because in fact the Court's ruling on that issue postdated the settlement itself.

 The trial court read into the doctrine of judicial estoppel an element of reliance by the alleged wronged party that is not required. *See, e.g.*, *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982). The court misread *Pack Monadnock* as requiring "that the change in position did not induce the alleged wronged party to take action." What *Pack Monadnock* actually says is that the earlier position taken by the State "did not induce either the *probate court* or *superior court* to take action." *Pack Monadnock*, 147 N.H. at 426 (emphasis added). That is just another way of saying that the party against whom estoppel is asserted did not "succeed[] in persuading a court to accept that party's earlier position." *Id.* (quotation omitted). Thus, the factors we noted in *Pack Monadnock* do not contain a requirement that the alleged wronged party be induced to act.

The plaintiffs contend that the second factor in the general judicial estoppel inquiry is satisfied because the trial court clearly accepted IDM's position in the court's order on the malpractice defendant-attorneys' motion *in limine* to exclude evidence of rescission damages. They argue, "The fact that the Court did not publish this decision does not matter in the context of a judicial estoppel analysis." IDM, on the other hand, asserts that "[t]he trial court never issued any order or decision adopting IDM's position in the prior case, whatever the court may have thought or

believed about IDM's position in that case." Thus, the parties frame the dispositive question as whether IDM "succeeded in persuading [the trial] court to accept [its] earlier position." *Pack Monadnock*, 147 N.H. at 426.

■ Before addressing that question, we note that the factors recited in *Pack Monadnock* and *Kelleher* are not fixed elements to be applied blindly in every case. Indeed, in *New Hampshire v. Maine*, the Supreme Court restated the observation of other courts that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire v. Maine*, 532 U.S. at 750 (quotation and brackets omitted). "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751.

In particular, courts have taken a number of different approaches with respect to the second factor. One court has observed:

> If there is an uncertain aspect of the doctrine of judicial estoppel it is whether a party can be estopped only when its inconsistent assertion was actually adopted by the court in the prior action or at least was successfully maintained in that action without necessarily having been judicially adopted, or whether the offending party need only have played "fast and loose" with the court even if ultimately unsuccessful in the prior action.

*AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 224-25 (D.N.J. 1992) (footnote omitted). Thus, at one end of the spectrum is the view that without the first court's acceptance of the party's position, "application of the rule is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected; the perception that either the first or the second court was misled is not present." *Edwards*, 690 F.2d at 599. At the other end is the view that "if what is at issue is the integrity of the court, whether a court is asked to rely or has in fact relied on a prior inconsistent position should be a distinction without a difference." *AFN*, 798 F. Supp. at 225.

■ We need not now determine whether judicial estoppel always requires that the party to be estopped succeed in the first action, either by persuading the first court to accept its position or in some other way, or to define success for such purposes. We believe that under the unique facts of this case, IDM sufficiently asserted its position to the first court, and sufficiently succeeded in persuading the first court to accept its position, that judicial estoppel should apply.

IDM's attorney represented to the court in the malpractice suit that the corporation had an outstanding liability on its books to its shareholders for their rescission rights. He further represented that since IDM was no longer in business, the shareholders did not have to sue the corporation: "They—they're entitled to get their money out of liquidation. And what they're entitled to under [RSA] 421-B(25) is the—is—is what they paid in, the $635,000 plus costs attorney's fees and interest." In ruling on the motion *in limine*, the court stated: "Upon reflection, the Court accepts the position of [IDM] on this issue." We conclude this is sufficient judicial acceptance of IDM's position to now apply the doctrine of judicial estoppel. As we have already determined that reliance by the wronged party is not a required factor, we attach no significance to the court's failure to issue the order.

IDM next argues that the third factor in the judicial estoppel analysis is not met because it gained no unfair benefit and the plaintiffs suffered no unfair detriment. In particular, IDM argues that because the malpractice settlement "provided the 'pool' from which plaintiffs are trying to collect ... plaintiffs *benefited* from the [malpractice] settlement and were not in any way hurt by it."

IDM's argument misses the point. The plaintiffs would be hurt not by the initial settlement itself, but by now allowing IDM to maintain the inconsistent position that the plaintiffs have no rescission rights after IDM used those rights to obtain a settlement from the defendant-attorneys in the malpractice suit. If the plaintiffs were to succeed in a rescission suit against IDM, they would elevate their priority in the corporate liquidation from shareholder to judgment creditor. *Cf. Jenot v. White Mt. Acceptance Corp.*, 124 N.H. 701, 706 (1984) ("We subscribe to the general rule that after the dissolution of a corporation its property passes to its stockholders subject to the payment of the corporate debts." (Quotation omitted.)). As the corporation had proposed to pay the outside shareholders $.132 per share, while paying 100% of its outstanding liabilities to creditors, including Sheppard as an employee and Leggett as a debt holder and employee, the plaintiffs would suffer unfair detriment if prohibited from achieving creditor status in IDM's liquidation.

Having concluded that judicial estoppel is appropriate in this case, we affirm the trial court's grant of summary judgment against IDM on that alternative ground. *Cf. Sherryland*, 150 N.H. at 267. Because IDM is estopped from denying that the plaintiffs are entitled to rescission under RSA 421-B:25, we need not address its arguments regarding the proper interpretation of that statute, federal preemption, and the admission into

evidence of deposition testimony allegedly based on privileged communications to which IDM was denied access during discovery.

The plaintiffs next contend that the trial court erred in declining to award them a specific judgment and in ruling instead that they could not obtain a judgment until the claims of all other shareholders had been asserted or were barred by the statute of limitations. Specifically, the trial court ruled:

> The plaintiffs' entitlement to full recovery and [rescission] damages under the statute is no greater than the entitlement of any other similarly-situated shareholder. Thus, the Court cannot award a specific verdict in favor of the plaintiffs until the Statute of Limitations has expired and it is known how many claimants there will be to the moneys available for payment.

The plaintiffs assert that this was error because, among other things, it potentially compromises their judgment "based upon the rights of individuals who have elected to take no action." They argue that "[b]y fashioning its order in the manner it did, the Trial Court essentially (and improperly) awarded a judgment in an undetermined amount to non-parties." We agree.

■ We have upheld a trial court's "refus[al] to amend [a] petition to extend the requested relief to persons who were not parties to the action," citing with approval the proposition that a "court may and should refuse to entertain [an] action by one who seeks to invoke [a] remedy on behalf of another who seeks no redress." *Real Estate Planners v. Town of Newmarket*, 134 N.H. 696, 699-700 (1991). We conclude that having brought suit solely on their own behalf, the plaintiffs are entitled to an individual judgment in the amount owed to them. The portion of their judgment that they may actually receive upon liquidation of IDM is not an issue before us. Accordingly, we reverse this ruling and remand for entry of a judgment in accordance with this opinion.

■ Finally, Leggett and Sheppard argue that the trial court erred in applying equitable estoppel to them. In an order subsequent to its initial order on judicial estoppel, the court stated that judicial estoppel could not be applied to the individual defendants because "[n]one were parties to the malpractice case." However, the court's later order affirming its grant of summary judgment to the plaintiffs on grounds of equitable estoppel was unclear as to whether it applied to the individual defendants as well as to IDM. The individual defendants moved for clarification. The court ruled that its findings were applicable to Leggett and Sheppard, but not to the other individual defendants.

Equitable estoppel serves to forbid one to speak against his own act, representations or commitments communicated to another who reasonably relies upon them to his injury. The party asserting estoppel must prove the following essential elements: (1) a knowingly false representation or concealment of material facts; (2) a recipient who was intentionally, or through culpable neglect, induced to rely upon the false representation or concealment, ignorant of the truth; and (3) a resultant injury.

*Cadle Co. v. Bourgeois*, 149 N.H. 410, 418 (2003) (citation omitted).

■■ Leggett and Sheppard assert that the court erred in applying equitable estoppel to them because, among other things, none of the representations made in the underlying malpractice suit were made on behalf of them as individuals. They argue that the trial court's orders fail to identify the specific representations made by them that serve to equitably estop them. As a result, they contend that we are "left to guess at both the 'specific facts' required for estoppel and the uncontested genuine issues of material fact required to meet [the plaintiffs'] burden on summary judgment." (Citation omitted.) We agree.

Although the trial court ruled on IDM's requests for findings of fact and rulings of law, and provided narrative explanation for many of its rulings in its various written orders, we are unable to determine what undisputed facts it found to support the application of equitable estoppel to Leggett and Sheppard. For instance, in one order the court stated: "It should be noted that during ... settlement discussions the attorneys representing the corporation as plaintiff made it clear that their real client, the one making all of the decisions in terms of settlement, was John Leggett." In another order, it found that "[t]he testimony at the evidentiary hearing strongly suggests that the principals of IDM elected to keep the shareholders completely in the dark with respect to the particulars of the original litigation and its settlement." Thus, we are unsure whether the representation that the trial court found to support estoppel was made to the court or to the shareholders. We are similarly unsure what facts the trial court found to support the other elements of equitable estoppel.

Where a party requests findings and rulings, "the court is obligated to make findings of the 'basic' or 'essential' facts that are sufficient to support the ultimate decision." *Crown Paper Co. v. City of Berlin*, 142 N.H. 563, 571 (1997) (quotation omitted); *see* RSA 491:15 (1997). "The object is to allow an opportunity for adequate review in this court by providing us with the actual basis for the trial court's decision, in terms of facts found and law applied." *Crown Paper*, 142 N.H. at 571 (quotation omitted).

Accordingly, we vacate the order against Leggett and Sheppard and remand for further findings and rulings.

> *Affirmed in part; reversed in part; vacated in part; and remanded.*

DUGGAN and GALWAY, JJ., concurred.