NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2016-0370


WAYNE ROSS, TRUSTEE OF THE WAYNE ROSS REVOCABLE TRUST & a.

v.

DONALD W. ROSS & a.

Argued:  June 1, 2017
Opinion Issued:  September 28, 2017

Ramsdell Law Firm, P.L.L.C., of Concord (Michael D. Ramsdell on the brief and orally), for the plaintiffs.


Preti, Flaherty, Beliveau & Pachios, PLLP, of Concord (Peter G. Callaghan on the brief and orally), for the defendants.

HICKS, J.  The plaintiffs, Wayne and Ruth Ross, trustees of the Wayne Ross Revocable Trust and the Ruth Ross Revocable Trust, respectively, appeal an order of the Superior Court (McNamara, J.), following a bench trial, in favor of the defendants, Donald Ross and Rossview Farm, LLC (the LLC).  The plaintiffs contest the trial court's findings that the parties entered into a lease for the plaintiffs' lifetimes and that they had no right to evict the defendants pursuant to RSA 540:2, II(d) or (e) (2007).  We vacate and remand.

I. Facts

       The trial court found the following facts. The plaintiffs have owned a farm in Concord since at least 1957. Throughout the years, the farm has produced or sold dairy products, hay, firewood, timber, Christmas trees, strawberries, maple syrup, and blueberries.

       In 1998, one of the defendants, Donald, the plaintiffs' son, agreed to work on the farm. Through the early 2000's, Donald was treated as an employee of the farm, and he began to assume increasing responsibility for the farm's operation. As he did so, the plaintiffs transferred assets of the farming operation to him. In 2003, Wayne told Donald that he wanted Donald to run the farm until Wayne's death, whereupon Donald would inherit the farm. The plaintiffs consulted with attorneys about estate planning and attended seminars on transferring family farms. In 2004, defendant Rossview Farm, LLC was registered with the State and the parties granted the LLC permission to use the trade name "Rossview Farm." Around 2004 or 2005, Donald took over operations of the farming business. Wayne continued to work on the farm occasionally, but Donald received all of the farm's income and paid all of its expenses.

       The parties agreed in January of 2006 that Donald would pay monthly rent. In June of that year, Wayne agreed to revise a United States Department of Agriculture (USDA) contract to reflect that "Wayne Ross [was] leasing [the farm's] operation to Donald." (Quotation omitted.) Nine days after Donald submitted the revision, the parties executed a written lease which provides, in total, as follows:

       June 23, 2006

       To whom it concerns:

       We, Wayne and Ruth Ross, lease our farm land on District #5 Road
       in Concord, NH, to Donald Ross of Rossview Farm LLC for $21,000
       per year.

The trial court found that the written lease was prepared only to satisfy the requirements of the USDA and that the original lease between the parties was oral. Between 2004 and 2013, Donald ran the farm and made significant investments in it. Donald paid the rent of $21,000 per year, although he did not always pay on time and frequently paid in cash, until 2011, when the parties agreed rent would no longer be required.

       By 2013, the parties were at odds with one another. Two physical altercations occurred, one in 2010 and one in 2013. After serving Donald an

2

"eviction notice and notice to vacate, on or before January 11, 2014," the plaintiffs filed this action seeking a preliminary injunction, a permanent injunction, and declaratory judgment to determine their rights to terminate the lease and declare that Donald had no right to remove property from, or permanently alter property on, the farm or to use Rossview Farm's graphic.

After a bench trial, the trial court found that: (1) Donald's lease of the farm is for the plaintiffs' lifetimes; (2) the plaintiffs do not have the right to evict Donald for non-payment of rent; (3) the plaintiffs do not have the right to evict Donald pursuant to RSA 540:2, II(d) or (e); (4) Donald maintains the right to the perennial crops on the property; and (5) the LLC is the owner of the trade name and logo of Rossview Farm. The plaintiffs moved for reconsideration, which the trial court denied. This appeal followed. On appeal, the plaintiffs challenge only the trial court's findings that the lease's duration is for the plaintiffs' lifetimes and that RSA 540:2, II (Supp. 2016) does not authorize them to evict the defendants.

II. Lease

On appeal, the plaintiffs contend that the trial court erred by concluding that the parties entered into a lease for the plaintiffs' lifetimes. Specifically, they argue that it was error for the trial court to rely upon parol evidence to determine the duration of the lease because the June 23, 2006 document is an insufficient writing under the statute of frauds. See RSA 506:1 (2010). It is insufficient, in the plaintiffs' view, because it lacks an essential term: the duration. The defendants dispute that the duration is an essential term of a memorandum satisfying the statute of frauds and, alternatively, argue that the June 23, 2006 document identifies the duration of the lease with reasonable certainty to satisfy the statute of frauds. The defendants further argue that to enforce the statute of frauds would perpetrate a fraud and that the doctrine of part performance removes the lease from the operation of the statute of frauds.

A. Availability of judicial review

The trial court found that the plaintiffs conceded that the June 23, 2006 document satisfies the statute of frauds. Conceding an issue in the trial court waives a party's right to contest that issue on appeal. See Milliken v. Dartmouth-Hitchcock Clinic, 154 N.H. 662, 669-70 (2006) (concluding that plaintiffs waived appellate argument by conceding issue in trial court). We uphold the trial court's factual finding unless it lacks evidentiary support or is legally erroneous. Jesurum v. WBTSCC Ltd. P'ship, 169 N.H. 469, 476 (2016).

The trial court found that the plaintiffs conceded that the June 23, 2006 document satisfied the statute of frauds because, in their post-trial memorandum, the plaintiffs explained their position that the June 23, 2006

document "is a writing signed by all the parties that states the terms of the parties' agreement. This document satisfies the statute of frauds and governs their relationship." The "clear" language of the June 23, 2006 document, the plaintiffs posited, creates a yearly lease. However, the plaintiffs also argued in the post-trial memorandum that the defendants' introduction of parol evidence of the parties' intent to create a perpetual lease violated the statute of frauds because "the intent of the parties to create a perpetual lease must be clear from the face of the document and there must be a document to satisfy the statute of frauds." Thus, the plaintiffs did not concede that the June 23, 2006 document satisfies the statute of frauds for all purposes; instead, they contended that it "satisfies the statute of frauds" if the document is read to create a yearly lease.[1] Therefore, the trial court's finding that the plaintiffs conceded the issue lacks evidentiary support, and we conclude that the plaintiffs did not waive their statute of frauds argument by concession.

We next address the defendants' argument that the plaintiffs did not preserve their argument that the June 23, 2006 document does not satisfy the statute of frauds. "It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial." Thorndike v. Thorndike, 154 N.H. 443, 447 (2006) (quotation omitted). "The rationale behind the rule is that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." Mortgage Specialists v. Davey, 153 N.H. 764, 786 (2006) (quotation and brackets omitted). Accordingly, we have held that when an issue is raised for the first time in a motion for reconsideration and failure to raise the issue earlier did not deprive the trial court of a full opportunity to correct its error, the issue has been preserved for our review. Id.

In the trial court, the plaintiffs argued that the lease was only a one-year lease. Accordingly, they contended that the June 23, 2006 document "satisfies the statute of frauds." When the trial court concluded in its order that the lease was actually for the duration of the plaintiffs' lifetimes, they properly filed a motion for reconsideration raising the argument that they now raise on appeal: that the lease the trial court found was for the plaintiffs' lifetimes violated the statute of frauds in the absence of a writing reflecting "a term of years." Furthermore, the trial court specifically addressed whether the June 23, 2006 document contained "the essential elements of 'a writing'" satisfying

---

[1] Although the plaintiffs say that the document would "satisf[y] the statute of frauds" for a one-year lease, we note that we have never decided whether a one-year lease is within the statute of frauds. See, e.g., McIntire v. Woodall, 140 N.H. 228, 231 (1995) (noting that if an agreement can be, and is, fully performed by one party within one year, "the agreement of the other party is not within the statute." (quotation omitted)). But see RSA 506:1 (contracts for the sale of an interest in land are within the statute of frauds); J.G.M.C.J. Corp. v. C.L.A.S.S., Inc., 155 N.H. 452, 462 (2007) ("An agreement to lease land for a term of years is a contract to convey an interest in land within the Statute of Frauds."). We need not decide the issue here.

the statute of frauds in its order on the plaintiffs' motion to reconsider. Thus, we conclude that the plaintiffs' argument is preserved.

The defendants also argue that the plaintiffs are judicially estopped from arguing that the June 23, 2006 document was insufficient to satisfy the statute of frauds because the argument is "directly contrary to [the plaintiffs'] position below." "The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Cohoon v. IDM Software, 153 N.H. 1, 4 (2005) (quotation omitted). "We have noted three factors that typically inform the decision whether to apply the doctrine in a particular case." Id. (quotation omitted).

> One factor to consider in deciding whether to apply the doctrine of judicial estoppel is whether the party's later position is clearly inconsistent with its earlier position. Courts also regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Id. (quotation omitted). Here, the argument the plaintiffs raise on appeal — that the June 23, 2006 document does not satisfy the statute of frauds for a lease for the plaintiffs' lifetimes — is not inconsistent with their original theory — that the document "satisfies the statute of frauds" for a year-to-year lease. Because the plaintiffs' argument on appeal is not inconsistent with their earlier position, neither the first nor third factors weigh in favor of judicial estoppel. Thus, we conclude that judicial estoppel does not apply.

Finally, the plaintiffs contend that the defendants' argument about part performance was not raised in the trial court. We construe the plaintiffs' contention as asserting that the defendants' part performance argument was not preserved. The defendants raised their argument — that the contract was withdrawn from the statute of frauds by the doctrine of part performance — in their objection to the plaintiffs' motion to reconsider, dated May 17, 2016. The trial court's order on the motion to reconsider was issued June 3, 2016. Thus, although the trial court did not address part performance in its order, the defendants' failure to raise the issue earlier did not deprive the trial court of the opportunity to address it. Therefore, the argument is preserved. See Mortgage Specialists, 153 N.H. at 786 (holding that issue is preserved if raised in motion for reconsideration and failure to raise issue earlier did not deprive trial court of opportunity to correct error).

B. Statute of frauds

The plaintiffs contend that the June 23, 2006 document was an insufficient writing under the statute of frauds because it lacked an essential term of the lease: the duration. The plaintiffs conclude that, because parol evidence is generally inadmissible to prove an essential term that is absent from a writing, the trial court erred in relying upon parol evidence to determine the duration of the lease.

The statute of frauds, as applicable here, provides that "[n]o action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person authorized by him in writing." RSA 506:1. An oral agreement to lease land for a term of years is a contract to convey an interest in land within the statute of frauds. Byblos Corp. v. Salem Farm Realty Trust, 141 N.H. 726, 729 (1997). Consequently, an agreement to transfer a leasehold interest must also be in writing to be enforceable. Id. "To satisfy the statute of frauds, the writing must express the essential terms of the contract." Greene v. McLeod, 156 N.H. 724, 727 (2008) (quotation omitted). To allow parol evidence to supply the essential terms of the contract would circumvent the purpose of the statute of frauds. Badr Export and Import, Inc. v. Groveton, 122 N.H. 101, 103 (1982).

The trial court concluded that the June 23, 2006 document satisfies the statute of frauds because it was signed by the parties to be charged and contains the essential terms of "'a writing' sufficient to satisfy the statute of frauds," which the court stated were the identity of the property to be leased and the price. In contracts for the sale of land, the essential terms that the writing must express include: the purchase price, the identity of the parties, and a description of the real estate in question. Greene, 156 N.H. at 727. The plaintiffs do not contend that any of those essential terms are absent from the June 23, 2006 document.

However, the plaintiffs argue that, for a lease for a term of years, the writing must express a fourth essential term: the duration of the lease. The defendants respond, correctly, that this court has never held that the duration of a lease is an essential term that must be expressed in writing to satisfy the statute of frauds. See Gowing v. Bell, 96 N.H. 361, 363 (1950) (noting that the parties agree that duration is an essential element of a lease).

Although we have not held that the duration of a lease is an essential term, numerous other jurisdictions have. In Simon v. Simon, 625 N.E.2d 564, 567 (Mass. App. Ct. 1994), the court explained:

> In the case of a lease or an agreement to lease, the duration of the leasehold interest is central to that undertaking. It is an

essential element in a lease for a term that there be a demise for a period definitely fixed or at least capable of definite ascertainment.

(Quotation omitted.) Thus, the court concluded that an option agreement to lease a retail store did not satisfy the statute of frauds because it "fail[ed] to define the time period over which the rental was to extend." Simon, 625 N.E. at 567-68; accord, e.g., Custis v. Valley National Bank of Phoenix, 375 P.2d 558, 561 (Ariz. 1962); English v. Standard Optical Co., 814 P.2d 613, 616 (Utah Ct. App. 1991) (citing Birdzell v. Utah Oil Refining Co., 242 P.2d 578, 580 (Utah 1952)); see also Annotation, Sufficiency of Description of Terms and Conditions of Lease, or Lease Provision, so as to Comply with Statute of Frauds, 12 A.L.R.6th 123, 138 (2006) (noting that courts have held that leases must, at a minimum, identify: parties; premises to be leased; duration of lease, including when the term begins; and rental amount). We agree with the reasoning of these courts and conclude that the duration of a lease is an essential term that must be expressed in writing to satisfy the statute of frauds.

The defendants argue that time for performance is not an essential term under the statute of frauds. We have held that the time for performance is not an essential term of an assignment of an option to purchase real estate, Lapierre v. Cabral, 122 N.H. 301, 303, 305 (1982), nor of a sale of wood and timber to be cut on a tract of land, Kidder v. Flanders, 73 N.H. 345, 346 (1905). Unlike an assignment of an option to purchase real estate or a sale of timber growth, however, the time for performance of a lease for a term of years is essential because "the duration of the leasehold interest is central to that undertaking." Simon, 625 N.E.2d at 567. The defendants cite, and we have found, no authority to support the proposition that the duration of a lease is not an essential term.

The defendants further argue that, to satisfy the statute of frauds, the duration of the lease need only be reasonably certain from the June 23, 2006 document. Because the document describes the rent as "$21,000 per year," the defendants contend that the writing identifies the duration of the lease as greater than one year with reasonable certainty. We agree that reasonable certainty as to an essential term can suffice to satisfy the statute of frauds; however, the phrase "per year" is insufficient to invoke with reasonable certainty a specific term of years.

If an essential term is "neither stated nor determinable," the writing is insufficiently definite to satisfy the statute of frauds. MacThompson Realty v. City of Nashua, 160 N.H. 175, 179 (2010) (quotation omitted). However, the statute of frauds may be satisfied if the absent essential term can be determined by the contents of the writing. See id. (finding that writing satisfied the statute of frauds where absent essential term was "readily determinable

from the settlement agreement").  For example, a writing that does not explicitly state the agreed-upon price may satisfy the statute of frauds if "the contract prescribes a method," such as a future appraisal, "which will necessarily result in the determination of the price."  Id. (quotation omitted).  Similarly, a writing that describes the property to be conveyed without "a statement of its boundaries, its geographical location or other designations frequently used in formal conveyances of real estate," is sufficiently definite to satisfy the statute of frauds "[i]f the descriptive language used is clear and explicit in denoting a particular lot of land."  Jesseman v. Aurelio, 106 N.H. 529, 532 (1965) (quotations omitted); see also Cunningham v. Singer, 111 N.H. 159, 160-61 (1971) (holding that "house with contents and one acre of land . . . first house on the left belonging to Mrs. Anna Singer . . . on Lewis Hill Bethlehem, N.H." described property with reasonable certainty); Gilbert v. Tremblay, 79 N.H. 431, 432-33 (1920) (finding "234 Union Ave & lot" a sufficient description of land to be conveyed (quotation omitted)).

Here, the duration of the lease is neither stated in nor determinable from the June 23, 2006 document.  The single sentence contained in the document provides only that: "We, Wayne and Ruth Ross, lease our farm land on District #5 Road in Concord, NH, to Donald Ross of Rossview Farm LLC for $21,000 per year."  The duration is not included, nor does the document provide a method by which the duration could be determined.  The descriptive language, "per year," is not clear and explicit in denoting a particular duration of the lease.  See Campbell v. Sheraton Corp. of America, 253 S.W.2d 106, 110 (Mo. 1952) (holding that phrase "salary is to be $12,000 a year" did not fix duration of employment).  Thus, the June 23, 2006 document is insufficiently definite to satisfy the statute of frauds.

Based upon the foregoing, we conclude that the trial court erred when it found that the June 23, 2006 document satisfied the statute of frauds.  However, "[b]ecause strict enforcement of the statute can produce frustration on the one hand, and unethical conduct on the other, the law seeks to alleviate the harshness of the statute when some operating facts, such as fraud, part performance or other equitable considerations, are present."  Greene, 156 N.H. at 728 (quotation, brackets, and ellipsis omitted).  "The part performance doctrine is a judicial device intended to prevent the terms of a formal statute from doing grave injustice."  Id. (quotation and brackets omitted).  It is well established that the part performance doctrine "effectively withdraws contracts from the operation of the statute of frauds when application of the statute would result in fraud or irreparable injury on the purchaser who has performed his part of the agreement."  Id. (quotations, citation, and brackets omitted).  The defendants argue on appeal, as they did below, that the doctrine of part performance withdraws this lease from the operation of the statute of frauds.  We decline to rule on this issue in the first instance.  We, therefore, vacate and remand for the trial court to determine whether the doctrine of part

performance or other equitable considerations withdraw this lease from the operation of the statute of frauds.

III. Right to terminate lease pursuant to RSA 540:2

Finally, the plaintiffs contend that the trial court erred by concluding that neither RSA 540:2, II(d) nor (e) gave them authority to terminate the lease. RSA 540:2, II provides that "[t]he lessor or owner of restricted property may terminate any tenancy" with proper notice, for specified reasons including, in subsection (d), "[b]ehavior of the tenant or members of his family which adversely affects the health or safety of the other tenants or the landlord or his representatives" or, in subsection (e), "[o]ther good cause." (Emphasis added.) "Restricted property" generally means residential property. RSA 540:1-a, II (2007) (quotation omitted); N.A.P.P. Realty Trust v. CC Enterprises, 147 N.H. 137, 141 (2001). By contrast, "[n]onrestricted property" is defined, in relevant part, as "all real property rented for nonresidential purposes." RSA 540:1-a, I (2007) (quotation omitted). The question of whether the disputed property constitutes "[r]estricted" or "[n]onrestricted" property is a threshold issue that the trial court did not address. RSA 540:1-a, I, II (quotations omitted); RSA 540:2, I, II (Supp. 2016). Based on the record before us, the disputed property appears to be farmland "rented for nonresidential purposes," RSA 540:1-a, I, and the plaintiffs themselves identified it as "[n]onrestricted property" in the eviction notice with which they served the defendants. (Quotation omitted.) Thus, it is unclear from the record why RSA 540:2, II is applicable to the case before us.

The plaintiffs contend that, although the trial court did not explicitly find that the lease involved restricted property, we should assume that the trial court made all of the subsidiary findings necessary to support its decision. See In the Matter of Aube & Aube, 158 N.H. 459, 466 (2009) ("We must assume that the trial court made subsidiary findings necessary to support its general ruling." (quotation omitted)). However, we will not assume that the trial court made a particular subsidiary finding if the record does not support it. Cf. id. ("We will uphold the trial court's decision unless the record does not support it . . . ."). We can find no support in the record for a finding that the disputed property is "[r]estricted property" under RSA 540:1-a, II (quotation omitted). Accordingly, we vacate the trial court's order on the plaintiffs' RSA 540:2, II claim and direct the trial court, upon remand, to determine the threshold issue of whether the disputed property is "[r]estricted property" or "[n]onrestricted property" under RSA 540:1-a.

IV. Conclusion

Because we conclude that the trial court's finding that the June 23, 2006 document satisfied the statute of frauds was error, and because we can find no

support in the record for the trial court's implicit finding that the disputed property was "[r]estricted property" under RSA 540:1-a, we vacate and remand to the trial court for determinations as to: (1) whether the lease is withdrawn from the statute of frauds by the doctrine of part performance or other equitable considerations and (2) whether the disputed property is "[r]estricted property" or "[n]onrestricted property" under RSA 540:1-a. (Quotations omitted.)

Vacated and remanded.

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred.