NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court–Brentwood Probate Division
No. 2019-0283


IN RE R. M.


Submitted:  November 6, 2019
Opinion Issued: November 22, 2019

Boynton Waldron Doleac Woodman & Scott, PA, of Portsmouth (Christine W. Casa on the brief), for the petitioner.


Casassa Law Office, of Hampton (Lisa J. Bellanti on the brief), for the respondent.

HANTZ MARCONI, J.  The respondent appeals an order of the Circuit Court (Leonard, J.) renewing an order for involuntary admission to New Hampshire Hospital for the purpose of allowing him to remain on a conditional discharge for a period of five years.  See RSA 135-C:45, III, :46 (2015).  On appeal, the respondent challenges the sufficiency of the evidence and argues that the five-year renewal was not the least restrictive treatment option.  We affirm.

The relevant facts follow.  The respondent is a 30-year-old man who has been hospitalized on multiple occasions as a result of schizophrenia.  When the respondent fails to take his prescribed anti-psychotic medication, he becomes paranoid, violent, and suicidal.  In addition, he experiences hallucinations,

paranoid delusions, and difficulties with impulse control and exhibits "a serious level of aggression."

The respondent was first hospitalized in 2010 after voicing suicidal ideation, stating that he would be "better off dead." He was admitted on an emergency basis again in February 2015 due to concerns of suicidal threats, incapacity, and his paranoid belief that people were conspiring against him. The respondent was next hospitalized in January 2016 as a result of conduct that included locking his roommate in a closet. He was admitted to the hospital again in February 2016 due to an altercation with his roommate. He was discharged in May 2016 on a three-year conditional discharge. His conditional discharge was revoked in July 2016 because the respondent hit his mother. The respondent's most recent hospitalization was in January 2018 when he was found to have been "decompensating, going out in the cold without sufficient clothing, making poor judgments," and, possibly, experiencing auditory hallucinations as a result of failing to take his prescribed medication.

In early March 2019, a few weeks before the respondent's three-year conditional discharge was set to expire, the local community mental health center filed a petition to renew his conditional discharge. The statement of the respondent's treating psychiatrist, appended to the petition, set forth the psychiatrist's opinion:

> The events of multiple hospitalizations over an eight-year span [have] shown [the respondent] is not able to make decisions based on information provided to him, needing structure and support to follow through on self[-]care which a [conditional discharge] can provide. . . . [The respondent] has conducted himself in a way where he is dangerous to himself and/or others when not in treatment over the last eight years and has stated that he will not comply with his current treatment and medication regime if not court ordered via a [conditional discharge]. History has demonstrated when not compliant with medication, [the respondent] decompensates, becoming irrational in his behavior [and] delusional in his thinking. This leads him to conduct himself in a dangerous and threatening manner putting himself and others at risk, indicating a need for community-based treatment. A Conditional Discharge helps provide the structure [the respondent] requires to be compliant, prevent relapses, or make interventions before they become severe.

> In my professional opinion, [the respondent] needs an extension of his [conditional discharge] to prevent him from becoming a danger to himself or others in the community.

2

The trial court hearing on the matter took place on April 18, 2019. The treating psychiatrist, a court-appointed psychiatrist, and the respondent testified at the hearing. The treating psychiatrist testified that, in his opinion, the respondent's mental illness will create a potential likelihood of danger to himself or others if he fails to continue to take his prescribed medications and to participate in psychiatric treatment. The treating psychiatrist testified that the respondent has "very poor" insight into his mental health and need for treatment. He testified that, as recently as a week before the hearing, the respondent "made it very clear that he [does] not believe that he has schizophrenia and that he will not continue on an antipsychotic." According to the treating psychiatrist, when the respondent does not take his medication, he becomes "paranoid" and "violent." The treating psychiatrist testified that he recommends a conditional discharge for five years because, in the three years that the psychiatrist has been working with the respondent, he has "not seen any improvement in [the respondent's] insight and willingness for treatment . . . . If anything, [the respondent] has gotten more firm . . . in his belief that he does not have schizophrenia and does not need treatment."

The court-appointed psychiatrist concurred with the recommendation for a five-year renewal of the respondent's conditional discharge based upon the respondent's lack of insight into his mental illness. The court-appointed psychiatrist testified that, without a court order, it is more likely than not that the respondent will not continue with his therapy and anti-psychotic medications. The court-appointed psychiatrist testified that he is "very, very concerned" that, without his medications, the respondent will become psychotic and engage in assaultive behavior.

The respondent testified that he is not schizophrenic and does not need medication or therapy. According to the respondent, he was last admitted to the psychiatric hospital because he was experiencing symptoms of Attention Deficit Hyperactivity Disorder (ADHD). Following the hearing, the trial court found in favor of the petitioner, and ordered that the respondent be involuntarily admitted to New Hampshire Hospital for the purpose of renewing his conditional discharge for a period of five years. This appeal followed.

Before addressing the respondent's appellate arguments, we explain the procedural posture of this case. At the time of the April 2019 hearing, the respondent's most recent conditional discharge, imposed on May 12, 2016, had expired on March 24, 2019. The petition to renew was filed in early March 2019. As a matter of law, therefore, the respondent was still on a conditional discharge at the time of the hearing. In re Christopher K., 155 N.H. 219, 229-30 (2007); see RSA 135-C:39, II (2015). Accordingly, the issue before the trial court was whether to renew his conditional discharge, not whether to involuntarily admit him in the first instance.

In a conditional discharge renewal proceeding, the petitioner must show that the respondent is currently in such condition, as a result of mental illness, that "a prescribed regimen of medical, psychiatric, or psychological care or treatment is necessary to prevent," RSA 135-C:45, II (2015) (amended 2016), "a potentially serious likelihood of danger to himself or to others," RSA 135-C:34 (2015). Christopher K., 155 N.H. at 227. This standard "links a finding of future dangerousness to the existence of a mental illness that, without the prescribed treatment, would make it difficult if not impossible for the person to control his or her behavior." Id. In such a proceeding, the petitioner need not prove "current dangerousness" in the sense of a recent dangerous act. Id. at 225. Renewal orders, unlike original commitment orders, "may be based on a pattern of prior action and testimony relating to the question whether or not any cure for the [respondent's] condition has been effected." Id. at 224. (quotation omitted).

By contrast, in an initial involuntary admission proceeding, the petitioner must prove "current dangerousness" in the sense of a recent dangerous act. As we have previously explained, "there is no mechanical test for involuntary commitment, but commitment will not be ordered without proof of specific acts or actions demonstrating dangerousness." In re Fasi, a/k/a Cass, 132 N.H. 478, 484 (1989); see RSA 135-C:36, I(b) (2015). In an initial involuntary admission case, when "assessing present dangerousness, a court may, in its discretion, attach substantial weight to the evidence of past acts manifesting dangerousness." Fasi, 132 N.H. at 484. However, "[p]roof of the commission of such past acts is not . . . tantamount to proof of present dangerousness, and is not, accordingly, the touchstone for commitment." Id. Rather, such acts "merely help to predict the possibility of future dangerousness." In the Matter of B.T., 153 N.H 255, 262 (2006).

We turn now to the respondent's appellate arguments. The respondent first argues that the evidence before the trial court was insufficient because "[n]o evidence of recent dangerousness was present." We review sufficiency of the evidence claims as a matter of law and uphold the trial court's findings and rulings unless they lack evidentiary support or are tainted by error of law. Id. at 259. The trial court's findings are "final unless they are so plainly erroneous that [they] could not be reasonably made." RSA 567-A:4 (2019); see B.T., 153 N.H. at 259. Thus, we do not reweigh the evidence to determine whether we would have ruled differently. In re Guardianship of E.L., 154 N.H. 292, 296 (2006). Instead, we review the record to determine if the trial court's findings could be reasonably made given the evidence before it. Id. We defer to the trial court to resolve conflicts in testimony, measure the credibility of witnesses, and determine the weight to be given to testimony, recognizing that, as the trier of fact, the trial court is in the best position to measure the persuasiveness and credibility of evidence. Id. We will uphold the court's ruling unless no rational

fact finder could have made its findings by clear and convincing evidence. Christopher K., 155 N.H. at 232.

The respondent's argument is based upon a mistaken premise. Because this was a proceeding to renew a conditional discharge, rather than an initial proceeding to involuntarily admit the respondent, the petitioner did not have to prove "current dangerousness" in the sense of a recent dangerous act. Id. at 224-25. The respondent concedes as much in his brief.

We note that the trial court applied the more stringent standard governing an initial involuntary admission proceeding, instead of the standard that applies to a proceeding to renew a conditional discharge. When a trial court reaches the correct result on mistaken grounds, we may affirm if valid alternative grounds support the decision. Cohoon v. IDM Software, 153 N.H. 1, 4 (2005). Here, the trial court reached the correct result (renewal of the conditional discharge) but on mistaken grounds (applying a standard of dangerousness that requires proof of current dangerousness in the form of a recent dangerous act). We affirm the court's decision, nonetheless, because its decision is correct under the correct standard of dangerousness.

Here, the evidence establishes, by clear and convincing evidence, as a matter of law, that the respondent is currently in such condition, as a result of mental illness, that "a prescribed regimen of medical, psychiatric, or psychological care or treatment is necessary to prevent," RSA 135-C:45, II, "a potentially serious likelihood of danger to himself or to others," RSA 135-C:34. See Christopher K., 155 N.H. at 227. The court-appointed psychiatrist testified that the respondent has "a chronic illness" that "will not go away," such that "he will carry the risk of relapse with him . . . for the rest of his life." Both psychiatrists testified that, in order to prevent relapsing, the respondent needs insight into his mental illness and to remain compliant with his medication and therapy. Both psychiatrists testified that the respondent, in fact, has poor insight into his mental illness. The respondent testified that he is not schizophrenic and that his most recent psychiatric hospitalization was because of ADHD symptoms.

Both psychiatrists further testified that, without medication, the respondent will, eventually, become psychotic, and that when he is psychotic, he becomes violent and assaultive. Moreover, both psychiatrists opined that a conditional discharge is needed to ensure that the respondent continues taking his medications. The respondent's treating psychiatrist gave multiple examples of the respondent not taking his medications. He testified, for instance, that when the respondent's first conditional discharge was allowed to expire, the respondent "quickly stopped taking any medications and having any interactions with his treatment team." He also testified that, as recently as a week before the April 2019 hearing, the respondent stated his intent to cease

5

taking his medications. The court-appointed psychiatrist similarly observed that, in 2016, the respondent was admitted because he had stopped taking his medications. Because no reasonable fact finder could have found otherwise, we find, as a matter of law, by clear and convincing evidence, that the respondent is currently in such condition, as a result of mental illness, that "a prescribed regimen of medical, psychiatric, or psychological care or treatment is necessary to prevent," RSA 135-C:45, II, "a potentially serious likelihood of danger to himself or to others," RSA 135-C:34. See Christopher K., 155 N.H. at 227, 233.

We next address the respondent's argument that conditional discharge for a lesser period of time would have been a less restrictive, appropriate treatment option. Assuming without deciding that, in this renewal proceeding, the respondent had a right to treatment in the least restrictive environment, based upon the evidence before it, the trial court could have reasonably determined that a renewal for less than five years was insufficient to allow him to gain effective insight into his condition and need for medication. For all of the above reasons, therefore, we conclude that the trial court's decision to renew the involuntary admission for the purpose of a conditional discharge for a period of five years was supported by the evidence and not legally erroneous. See B.T., 153 N.H. at 259.

Affirmed.


HICKS, BASSETT, and DONOVAN, JJ., concurred.

6